United States Court of Appeals,

Fifth Circuit.

No. 92-5043

Summary Calendar.

Lang Fong PRITCHETT, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

June 14, 1993.

Petition for Review of an Order of the Immigration & Naturalization Service.

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

Lang Fong Pritchett has brought this petition for review to challenge the Board of Immigration Appeals' denial of her motion to reopen her administrative proceedings and stay her deportation. Pritchett based this motion on her husband's pending petition for an immediate relative visa and her concurrent application for an adjustment of status. Finding that the BIA did not abuse its discretion in denying Pritchett's motion to reopen, we affirm.

## I. BACKGROUND

Lang Fong Pritchett, a native and citizen of Malaysia, was admitted to enter the United States in 1980 on a non-immigrant visa. Pritchett was given this visa so that she could attend the University of Southwestern Louisiana, where she pursued undergraduate and graduate degrees in computer science.

On October 13, 1983, Pritchett married Aremnie Royer, a United States citizen, in Lafayette, Louisiana. Royer then filed an immediate relative visa petition on Pritchett's behalf, and Pritchett submitted an application for adjustment of status in which she alleged that she and Royer were living as husband and wife. The Immigration and Naturalization Service (INS) approved Royer's visa petition and, in January 1984, adjusted Pritchett's status to lawful permanent resident alien.

Pritchett filed for divorce from Royer in June 1985, and she completed her masters degree

in computer science in May 1986. In June 1986, Pritchett was charged in a three-count indictment with violating 18 U.S.C. §§ 371 ("Conspiracy to commit offense or to defraud United States"), 1546 ("Fraud and misuse of visas, permits, and other entry documents"). Specifically, the indictment alleged that, in applying for immigration benefits as husband and wife, Pritchett and Royer conspired to defraud the United States and to conceal and make a false statement with respect to material facts within the jurisdiction of the INS. This indictment resulted from an investigation into a marriage fraud co nspiracy, which revealed that Pritchett's marriage to Royer was fraudulent and had been arranged by two other conspirators. Upon being questioned, Royer made a sworn statement that he had been paid $1,100 to marry Pritchett and that he had never resided with or had sexual relations with her.

Pritchett was granted a divorce from Royer in September 1986. The following week, she pled guilty to violating 18 U.S.C. § 1546 and was sentenced to a three-year period of probation. On that same day, the INS issued an order to show cause charging Pritchett with deportability pursuant to INA section 241(a)(5)[1] for having violated section 1546. In December 1986, Pritchett met Roland Pritchett, whom she married in May 1987. In July 1987, Roland filed a petition to obtain an immediate relative visa for Pritchett.

In September 1987, the court denied Pritchett's motion for a continuance of her immigration proceedings to await the adjudication of her husband's visa petition. A hearing on the merits of Pritchett's case was held in February 1988, during which Pritchett admitted her alienage and Malaysian citizenship but contested her deportability for violating 18 U.S.C. § 1546. Pritchett was found deportable, and she then exercised her statutory right under INA § 243(a)[2] to direct

---

[1]For deportation proceedings commenced on or after March 1, 1991, the Immigration Act of 1990, Pub.L. No. 101-649, 104 Stat. 4978, revised and renumbered the deportation and admissibility provisions. The anti-fraud provisions under which Pritchett was charged now appear as INA section 241(a)(3)(B). *See* 8 U.S.C. § 1251(a)(3)(B); *compare* 8 U.S.C. § 1251(a)(5) (1988) (pre-amendment version). Because proceedings against Pritchett commenced in September 1986, the deportation aspect of her case remains governed by the earlier provisions. *See* Pub.L. No. 101-649.

[2]This section, codified at 8 U.S.C. § 1253(a), provides in pertinent part that:

The deportation of an alien in the United States provided for in this chapter, or any

deportation to the country of her choice, designating Honduras. The immigration judge, refusing to honor Pritchett's designation, ordered her deported to Malaysia.

Pritchett appealed her deportation order to the BIA. The INS opposed Pritchett's appeal, noting that on May 29, 1989, the BIA had sustained the collateral denial of her husband's visa petition; Roland subsequently filed another petition to obtain an immediate relative visa for Pritchett.[3] Although the BIA found Pritchett deportable and dismissed her appeal, the BIA agreed that the immigration judge erred in refusing to honor Pritchett's country designation. Accordingly, the BIA ordered Pritchett deported to Honduras. Rather than appealing the BIA's decision regarding her deportability to this court, Pritchett filed a motion with the BIA to reopen her deportation proceedings, urging that her case be reopened so that she might apply for lawful permanent resident status on the basis of her marriage to Roland. The BIA denied Pritchett's motion, and she appeals.

## II. STANDARD OF REVIEW

As recently stated by the Supreme Court, "[t]here is no statutory provision for reopening of a deportation proceeding, and the authority for such motions derive[s] solely from regulations promulgated by the Attorney General." *INS v. Doherty,* --- U.S. ----, ---- - ----, 112 S.Ct. 719, 724-25, 116 L.Ed.2d 823 (1992). Although 8 C.F.R. §§ 3.2, 3.8(a) (1993) authorizes the BIA to reopen deportation proceedings under certain circumstances, these regulations do not affirmatively require the BIA to reopen the proceedings. "The granting of a motion to reopen is thus discretionary, and the Attorney General has "broad discretion' to grant or deny such motions." *Id.* at ----, 112 S.Ct. at 724 (citations omitted). Accordingly, we generally review the BIA's denial of a motion to reopen only for abuse of discretion. *Doherty,* --- U.S. at ---- - ----, 112 S.Ct. at 724-25 (stating that when the BIA denies a motion to reopen based upon a failure to establish a prima facie case for the relief

---

other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States.

[3]Roland did not seek judicial review of the BIA's denial of his original visa petition, and his second visa petition has also been denied. Nevertheless, Roland has appealed from the denial of his second visa petition, and the matter is now pending before the BIA.

sought or a failure to introduce previously unavailable, material evidence, abuse of discretion is the proper standard of review).[4]  As for actually applying the abuse of discretion standard to a BIA's denial of a motion to reopen, this court has explained that

> [t]he standard is whether the Board has acted within the bounds of an abundant discretion granted it by Congress.  It is our duty to allow [the] decision to be made by the Attorney General's delegate, even a decision that we deem in error, so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach.

*Osuchukwu v. INS,* 744 F.2d 1136, 1141-42 (5th Cir.1984).

### III. DISCUSSION

 A motion to reopen deportation proceedings to consider a newly-acquired claim of relief from deportation will generally be denied where the moving party fails to make a prima facie showing of eligibility for the relief sought.  *See Doherty,* --- U.S. at ---- - ----, 112 S.Ct. at 724-25.  However, in *In re Garcia,* 16 Interim Dec. 653 (BIA 1978), the BIA recognized an exception to this general rule for cases such as the one before us—a case in which a party has moved to reopen her deportation proceedings in order to consider an application for adjustment of status based upon an unadjudicated visa petition which was filed simultaneously.  Specifically, in *Garcia,* the BIA determined that, for the purposes of ruling on a motion to reopen, a pending visa petition which is prima facie approvable should be treated as if it were already approved.  *See id.* at 654;  *see also In re Guiragossian,* 17 Interim Dec. 161, 164 n. 5 (BIA 1979).

The BIA issued *Garcia* in 1978, and Congress has subsequently enacted legislation which bears on the exception recognized in that case.  Specifically, Congress enacted the Immigration Marriage Fraud Amendments of 1986, Pub.L. No. 99-639, 100 Stat. 3537 (the 1986 Amendments), and later the Immigration Act of 1990, Pub.L. No. 101-649, 104 Stat. 4978 (the 1990 Act).  The 1986 Amendments were enacted to deter fraud by aliens seeking to acquire lawful permanent

---

[4]*See also INS v. Abudu,* 485 U.S. 94, 110-12, 108 S.Ct. 904, 914-15, 99 L.Ed.2d 90 (1988) ("INS officials must exercise especially sensitive political functions ... and therefore the reasons for giving deference to agency decisions on petitions for reopening ... apply with even greater force in the INS context.") (footnote omitted);  *INS v. Rios-Pineda,* 471 U.S. 444, 446, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985) ("In this government of separation of powers, it is not for the judiciary to usury Congress' grant of authority to the Attorney General by applying what approximates de novo appellate review.") (citations omitted).

residence in the United States through marriage to a United States citizen or lawful permanent resident alien. For example, pursuant to the 1986 Amendments, an alien may not adjust his or her status based upon a marriage entered into during deportation proceedings unless he or she first resides abroad for two full years following that marriage. 100 Stat. at 3543, *codified at* 8 U.S.C. §§ 1154(h), 1255(e). A limited exception to this two-year foreign-residency requirement was enacted through the passage of the 1990 Act, which provides that the requirement may be waived

> if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's entry as an immigrant and no fee or other consideration was given (other than a fee or other consideration to an attorney for assistance in preparation of a lawful petition) for the filing of a petition under section 1154(a) of this title....

8 U.S.C. §§ 1154(g), 1255(e)(3).

In light of the 1986 Amendments and 1990 Act, the BIA recently revisited *Garcia* in *In re Arthur,* Interim Dec. 3173, 1992 WL 195807 (BIA). In *Arthur,* the BIA determined that, through its enactment of the 1986 Amendments and 1990 Act,

> Congress rather clearly created a presumption that marriages contracted after the institution of exclusion or deportation proceedings are fraudulent.... *Matter of Garcia, supra,* on the other hand, established a contrary presumption: that is, for the purposes of reopening, the relationship claimed on the visa petition supporting the application for adjustment of status is presumed to be bona fide unless clear ineligibility is apparent in the record.... We find that the rule of *Garcia* is inconsistent and incompatible with Congress' intent as expressed in the 1986 Amendments and the 1990 Act.

1992 WL at *4. The BIA then went on to conclude that it would make little sense to grant reopening under *Garcia* 's relaxed "clearly ineligible" test when the alien would then have to overcome the "clear and convincing evidence" test prescribed under section 1255(e)(3). *Id.* Accordingly, the BIA stated in *Arthur* that it will no longer grant moti ons to reopen deportation proceedings to consider an adjustment application based upon an unadjudicated visa petition resulting from a marriage entered into during the course of deportation proceedings. *Id.*

Pritchett asserts that the district court abused its discretion in denying her motion to reopen her deportation proceedings to consider her application for an adjustment of status—an application based upon her husband's unadjudicated petition for an immediate relative visa. Pritchett does not dispute the fact that the case before us fits squarely within all fours of *Arthur.* Rather, she boldly

asserts that this court should overturn *Arthur.*

Although Pritchett has presented us with some substantive policy concerns arising from the rule established in *Arthur,* she has presented these concerns to the wrong forum. *Arthur* is the BIA's interpretation of a legislative scheme in an area where the BIA carries expertise and has been bestowed with broad discretion. *See Yahkpua v. INS,* 770 F.2d 1317, 1321 (5th Cir.1985) ("We lack the power, even if we thought it kindly, to substitute our views for those of the Board."). Accordingly, we approach the BIA's determination with deference and review it only for reasonableness. *Rivera v. INS,* 810 F.2d 540, 540 (5th Cir.1987) (applying the reasonableness standard to the BIA's interpretation of the Immigration and Naturalization Act), *citing Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.").

Congress enacted the 1986 Amendments and the 1990 Act to deter fraud by aliens seeking to acquire lawful permanent residence in the United States by marrying a United States citizen or lawful permanent resident alien. *See generally* 8 U.S.C. §§ 1154(h), 1255(e). Pritchett pled guilty to committing such fraud. Although Pritchett has subsequently married another United States citizen and Congress has carved an exception into its two-year foreign residency requirement for marriages entered into during the course of deportation proceedings, this exception is a narrow one. *See* 8 U.S.C. § 1255(e). Not only must an alien attempting to squeeze into the exception establish by "clear and convincing evidence" that his or her marriage was entered into in good faith, he or she must make such a showing "to the satisfaction of the Attorney General...." *Id.* Moreover, the rule established in *Arthur* is limited to instances where aliens have not yet obtained immigrant visas, and, without such visas, aliens are ineligible for an adjustment of status. *See* 8 C.F.R. §§ 245.1(a), 245.2(a)(2)(i) (1992).[5] Accordingly, we find that the BIA's interpretation of the 1986 Amendments and 1990 Act, as it is articulated in *Arthur,* is not unreasonable. Specifically, we find that it was not unreasonable

---

[5]We note, however, that the general policy under section 245.2(a)(2)(i) is to retain an application for adjustment of status for processing where it is filed simultaneously with an immediate relative visa petition.

for the BIA to determine that motions to reopen should not be granted where they are based wholly upon an *unadjudicated* visa petition resulting from a marriage entered into during the course of deportation proceedings. As recognized in *Arthur,* even if such a petition were granted, the alien benefiting from such a petition still could not obtain an adjustment of status without satisfying the two-year foreign-residency requirement unless he or she were able to meet the exacting "clear and convincing" standard set forth in section 1255(e), and to meet that standard to the Attorney General's satisfaction.

Although Pritchett's current husband may still be trying to obtain an immediate relative visa for her, she is presently without one. Accordingly, she remains ineligible for an adjustment of status. *See* 8 C.F.R. §§ 245.1(a), 245.2(a)(2)(i) (1993). Moreover, we have found that the rule established by the BIA in *Arthur*—motions to reopen deportation proceedings will be denied where they are based wholly upon unadjudicated visa petitions such as the one in the case before us—is not unreasonable. We conclude, therefore, that the BIA's decision to deny Pritchett's motion to reopen on the grounds set forth in *Arthur* "is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach." *Osuchukwu,* 744 F.2d at 1141-42.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the BIA's denial of Pritchett's motion to reopen her deportation proceedings.