Clarinda Tavu VALDERRAMA,
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 99–71591

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 17, 2001

Filed Aug. 13, 2001

Johnson P. Lazaro, San Francisco, California, for the petitioner.

Lyle Jentzer, Washington, D.C. (argued); John M. McAdams, Jr., Washington, D.C. (brief), for the respondent.

Before: PREGERSON, FERNANDEZ, and GRABER, Circuit Judges.

PER CURIAM Opinion; Partial Concurrence and Partial Dissent by Judge PREGERSON

PER CURIAM:

Petitioner Clarinda Tavu Valderrama ("Valderrama"), a native and citizen of the Philippines who has lived in the United States since 1991, petitions for review of a final order of deportation by the Board of Immigration Appeals ("BIA"). The BIA affirmed the Immigration Judge ("IJ"), who denied Valderrama's application for asylum and withholding of deportation. The BIA found that Valderrama's hearing testimony was not credible and concluded that she had not carried her burden of establishing eligibility for asylum and withholding of deportation pursuant to the Immigration and Naturalization Act ("INA") §§ 208(a), 243(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a),[1] and we

---

1. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was enacted on September 30, 1996. Pub.L. No. 104–208 (Division C), 110 Stat. 3009–546. IIRIRA repealed INA § 106(a), and replaced it with a new judicial provision at INA § 242. This repeal became effective on April 1, 1997. *See* IIRIRA § 309(a). However, for cases

deny the petition.

■ The Attorney General has discretion to grant an alien asylum if the alien is determined to be a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). The applicant bears the initial burden of proof in demonstrating eligibility for asylum. 8 C.F.R. § 208.13(a); *Ghaly v. INS*, 58 F.3d 1425, 1428 (9th Cir.1995). "Refugee status is established by evidence that an applicant is unable or unwilling to return to his home country because of a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Navas v. INS*, 217 F.3d 646, 654 (9th Cir.2000). An alien may establish a well-founded fear of future persecution by proving past persecution or a "good reason" to fear future persecution. *Id.* at 654–55. An alien's well-founded fear of future persecution must be both subjectively and objectively reasonable. *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir.1998). An alien satisfies the subjective component by credibly testifying that she genuinely fears persecution. *Id.*

■ We apply the "substantial evidence test" in our review of the credibility findings underlying the BIA's decision. *Prasad v. INS*, 47 F.3d 336, 338 (9th Cir. 1995). The BIA must have "a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir.2000) (internal quotation marks and citations omitted). Under this standard of review, we are compelled to uphold the factual findings of the BIA if those findings are supported by " 'reasonable, substantial, and probative evidence.' " *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112

S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)).

■ Substantial evidence supports the BIA's finding that Valderrama's testimony at her deportation hearing was not credible. As the BIA noted, Valderrama's first and second petitions for asylum differed in a material way. In Valderrama's first petition, she stated that she had never been a member of a political group in the Philippines, while in the second petition she claimed that she was persecuted in the Philippines largely because of her membership in an anti-Communist political group. This discrepancy goes to the heart of Valderrama's asylum claim that she was persecuted "on account of" her political opinion. Therefore, we conclude that the BIA's adverse credibility finding is supported by substantial evidence.

Because we hold that substantial evidence supports the BIA's denial of asylum on the basis of its adverse credibility finding, we do not reach the issue whether the record supports the BIA's finding that Valderrama also lacks an objective, well-founded fear of future persecution. *Pal v. INS*, 204 F.3d 935, 939 (9th Cir.2000); *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1257–58 (9th Cir.1992).

■ We also reject Valderrama's claim that she is entitled to withholding of deportation. The standard for withholding of deportation is more stringent than the standard for establishing eligibility for asylum. Because Valderrama cannot meet the lower standard to demonstrate eligibility for asylum, she necessarily fails to show that she is entitled to a withholding of deportation. *Kazlauskas v. INS*, 46 F.3d 902, 907 (9th Cir.1995).

where, as here, deportation proceedings began before April 1, 1997, and where the final order of deportation was issued after October 30, 1996, IIRIRA's transitional rules provide

that, with certain nonrelevant exceptions, the court of appeals has jurisdiction under the old section 106(a) of the INA. *See* IIRIRA §§ 309(c)(1) and (4), 110 Stat. 3009–625–26.

■ At oral argument, Valderrama's counsel asked that we stay the mandate so that Valderrama may move to reopen her deportation proceedings with the BIA to apply for an adjustment of status based on her marriage to a United States citizen. Counsel argued that unless the mandate was stayed, Valderrama probably would be deported before the BIA could consider her motion.

One difficulty with counsel's request is that a motion to reopen these deportation proceedings would be untimely and would have been untimely by the date on which Valderrama filed her opening brief in this court. *See* 8 C.F.R. § 3.2(c)(2) (providing that the BIA will not entertain a motion to reopen deportation proceedings more than ninety days after the final decision).[2] We believe that it is inappropriate for this court to interfere with the normal processes of the INS and the BIA by delaying issuance of the mandate in the normal course. Doing so would provide a windfall for an alien who happens to appeal to this court, not available to aliens who do not happen to appeal. Accordingly, we decline to stay the mandate.

PETITION DENIED.

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the panel that Valderrama's adverse credibility finding is supported by substantial evidence. I write separately to express my view that the mandate should be stayed to allow Valderrama the opportunity to move the BIA to reopen her case so that she may apply for an adjustment of status based on her marriage to a United States citizen. Unless the mandate is stayed, Valderrama will more likely than not be deported before she has the chance to move the BIA to reopen her deportation proceedings.

In her appellate brief, Valderrama states that she married a lawful permanent resident in 1998 who was "soon to become a [United States] citizen" and that she has a child who is a United States citizen. At oral argument, Valderrama stated that her spouse became a United States citizen in March 2001. If Valderrama is in fact the spouse of a United States citizen, she may have a legal basis for filing a motion to reopen her deportation proceedings with the BIA to adjust her status to that of a lawful permanent resident. *See* INA § 245(i), 8 U.S.C. § 1255(i) (1994 & Supp. II 1996).[1]

Before Valderrama may file a motion to reopen her deportation proceedings with the BIA, however, she must obtain an immediate relative visa and an adjustment of status from the INS District Director for the district in which she resides.[2] *In re H–A–*, Interim Dec. 3394 (BIA 1999).

Pursuant to section 5 of the Immigration Marriage Fraud Amendments of 1986,

---

**2.** The dissent asserts that Petitioner might be able to take advantage either of the general provision in § 3.2(a) or of the exception in § 3.2(c)(3)(iii), *to* avoid the ninety-day bar. Section § 3.2(a) pertains to the Board's discretionary own-motion authority, and the Board has given no indication that it seeks to exercise such discretion here. Section 3.2(c)(3)(iii) requires a motion agreed upon by all parties and jointly filed. The INS has discretion to join in a motion, but, similarly, has given no indication that it would exercise its discretion favorably in this case.

**1.** At oral argument, Valderrama's counsel stated that Valderrama's husband applied for an immediate relative visa petition on her behalf in 1999. At that time, however, Val-

derrama's husband was not yet a United States citizen. Valderrama's counsel also stated at oral argument that Valderrama's husband did not become a United States citizen until March 2001. Counsel stated that Valderrama's husband's recent change in status to that of a United States citizen, which would affect the processing of the immediate relative visa petition, had not been reported to the INS. Counsel stated that he was waiting to file an amended petition "until the court of appeals issues a stay so that we can proceed with getting the visa without [Valderrama] getting deported."

**2.** An alien in deportation proceedings may apply for an adjustment of status by filing a

Pub.L. No. 99–639, 100 Stat. 3537, 3543, and the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978,[3] a marriage entered into by an alien during deportation proceedings is presumptively fraudulent. *In re Arthur*, 20 I. & N. Dec. 475, 479 (BIA 1992). Because of this presumption, the INS District Director will not approve Valderrama's husband's petition for an immediate relative visa unless it is established

> by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant. . . .

INA §§ 204(g), 245(e); 8 U.S.C. §§ 1154(g), 1255(e)(3).

If the INS District Director determines that Valderrama's marriage is lawful and was entered into in good faith, and the Director approves her husband's petition for an immediate relative visa, then Valderrama may apply to the BIA to reopen her deportation proceedings for the purpose of applying for an adjustment of status. A motion to reopen is based on factual grounds and must be supported by affidavits or other evidentiary materials. 8 C.F.R. § 3.2(c)(1). Valderrama must

prove to the BIA that the evidence presented in her motion to reopen: (1) is material; (2) was unavailable at the time of the original hearing; and (3) could not have been discovered or presented at the original hearing. *Id.*

The panel states that Valderrama's request to reopen these deportation proceedings "would be untimely and would have been untimely by the date on which Valderrama filed her opening brief in this court." In support of this conclusion, the panel cites an administrative rule stating that, in general, the BIA will not entertain motions to reopen, which, like Valderrama's, are filed more than ninety days after the BIA has rendered a final decision in a case. *See* 8 C.F.R. § 3.2(c)(2). While the panel correctly states the rule, it overlooks two relevant exceptions. First, the BIA retains the power, at any time, to "reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 3.2(a).

Second, if an applicant is able to obtain an immediate relative visa petition after the expiration of the ninety-day period and the INS joins in the filing of a motion to reopen deportation proceedings, the ninety-day filing requirement does not apply. 8 C.F.R. § 3.2(c)(3)(iii).[4] A recent memorandum from the Office of the General Counsel of the INS provides that INS

---

Form I–485 Application for Permanent Residence and attaching "the appropriate fee as explained in the instructions to the application." The Form is submitted to the INS District Director who has jurisdiction over the alien's place of residence. 8 C.F.R. § 245.2(1)(a) and (3)(ii).

**3.** In 1986, Congress enacted the amendments to the Immigration Marriage Fraud Act, Pub.L. No. 99–639, 100 Stat. 3537, to deter fraud by aliens seeking to acquire lawful permanent residence in the United States based on marriage to a United States citizen or a lawful permanent resident alien. Pursuant to the 1986 amendments, an alien may not apply to adjust her status based on a marriage

entered into during deportation proceedings unless she lives abroad for two full years following the marriage. In 1990, Congress amended the law again by enacting the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978. Section 702 of the 1990 Immigration Act carves out the exception to the two-year foreign residency requirement outlined above.

**4.** Under these circumstances, the BIA is authorized to reopen deportation proceedings, although it is not required to do so. *Pritchett v. INS*, 993 F.2d 80, 83 (5th Cir.1993) (" '[T]he Attorney General has "broad discretion" to grant or deny such motions.' ")

attorneys "may join in a motion to reopen for consideration of adjustment of status pursuant to INA § 245 if such adjustment of status was not available to the respondent at the former hearing, the alien is statutorily eligible for adjustment of status, and the respondent merits a favorable exercise of discretion." Letter from Bo Cooper, General Counsel, U.S. Department of Justice Immigration and Naturalization Service to Regional Counsel for Distribution to District and Sector Counsel (May 17, 2001), *available at* http:// www.bender.com/bender/open/Webdriver?Mlval=chan & channellD=immig.[5]

The facts of Valderrama's case—her marriage to a United States citizen and the birth of her United States citizen child following the initiation of deportation proceedings against her—appear to satisfy the criteria for the filing of a joint motion as set forth in the General Counsel's memorandum. *Id.* First, Valderrama's current grounds for adjustment of status were not available at the time of her deportation hearing, because she had not yet married her husband or given birth to their child. Second, Valderrama is statutorily eligible for an adjustment of status pursuant to

§ 245(i) provided that her husband obtains an approved relative visa petition on her behalf. Finally, Valderrama would likely be able to establish that she warrants "a favorable exercise of discretion," because, in making this determination, the INS considers "the hardship to the alien and/or her U[nited] S[tates] C[itizen] or L[awful] P[ermanent] R[esident] family members if the alien were required to procure a visa" while living outside of the United States. *Id.* Thus, for the reasons stated above, I do not think that the ninety-day filing requirement bars consideration of Valderrama's adjustment of status petition, and I would stay the mandate to allow her to pursue the filing of a joint motion to reopen with the INS.

Moreover, the BIA, once alerted to the circumstances of Valderrama's case, may elect to reconsider its decision sua sponte. *See, e.g., In re Rollins,* No. CIV.A73–539–855 (BIA Apr. 25, 2001) (ordering, sua sponte, the reopening of deportation proceedings of an alien from Barbados who had married a United States citizen given birth to premature twins) *available at* http:// www.bender.com/bender/open/Webdriver?Mlval =chan & channellD=immig.[6]

---

(quoting *INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992)). The authority governing a decision to reopen deportation proceedings "derive[s] solely from regulations promulgated by the Attorney General." *Pritchett,* 993 F.2d at 83 (alteration in original) (citation and internal quotation marks omitted). We review the BIA's grant or denial of a motion to reopen for abuse of discretion and will not overturn the decision unless the BIA acted "arbitrarily, irrationally, or contrary to law." *Israel v. INS,* 785 F.2d 738, 740 (9th Cir.1986) (citing *Sangabi v. INS,* 763 F.2d 374, 375 (9th Cir.1995)).

5. Significantly, the General Counsel's memorandum advocates a more lenient standard to join in a motion to reopen for an adjustment of status than the standard used in the past. Previously, the applicant was required to show "extraordinary and compelling circum-

stances" before the INS would agree to the filing of a joint motion to reopen. "Extraordinary or compelling circumstances" are defined as "exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." INA § 242B(f)(2).

6. Immigration judges may also decide to suspend deportation proceedings. In a recent case in Pennsylvania involving Ramesh Mohansingh, a forty–six year old alien from Trinidad, the IJ suspended deportation proceedings initiated by the INS while mohansingh's wife, a United States citizen, sought to obtain an immediate relative visa. Eric Schmitt, *2 Judges Do Battle in an Immigration Case,* N.Y. TIMES, June 22, 2001, at A18. Although the application for an immediate relative visa was

Once the mandate issues, however, Valderrama becomes immediately deportable and these two avenues of potential relief are foreclosed.[7] *See, e.g., Berroteran–Melendez,* 955 F.2d 1251, 1254 n. 2 (9th Cir. 1992) ("Unlike a petition for review, which automatically stays the order of deportation, an administrative motion to reopen filed with the BIA does not provide an automatic stay of deportation."). Because I believe that Valderrama should have the opportunity to have her motion to reopen her deportation proceedings fully and fairly considered by the INS and the BIA, I would stay the mandate in these proceedings.

filed after deportation proceedings had been initiated against Mohansingh, the IJ nonetheless "ruled for the family." *Id.*

7. In December 2000, Congress passed legislation to remedy precisely this type of injustice, which is known as the "LIFE Act Amendments." Pub.L. No. 106–554, 114 Stat. 2763, 2763A–324. The LIFE Act Amendments altered the provisions of INA § 245(i), 8 U.S.C. § 1255(i) to enable aliens who are married to United States citizens to remain in the United States while seeking to adjust their status to that of lawful permanent residents based on their marriage. to take advantage of this new law, an alien must: (1) be physically present in the United States; (2) have a spouse who is a lawful permanent resident or united states citizen; and (3) submit her application for an adjustment of status by April 30, 2001. *Id.; see also* Robert J. Lopez et al., *Thousands of Immigrants Race to Say "I Do" So They Can Say "We Stay,"* L.A. TIMES, March 15, 2001, at A1.

Because the "LIFE Act Amendments" do not apply to aliens who are already in deportation proceedings, Valderrama cannot take advantage of them. *See* Adjustment of Status To That of Person Admitted For Permanent Residence; Temporary Removal of Certain Restrictions of Eligibility, 60 Fed.Reg., 16383–16386 (Mar. 26, 2001) (to be codified at 7 C.F.R. pt. 245) ("The LIFE Act Amendments contain no special provisions for reopening cases under Section 245(i) where an alien already is the subject of a final order of removal, deportation or exclusion. Accordingly, motions to reopen based on Section 245(i) will be governed by the Department's current rules regarding motions to reopen...."). I point out this legislation to note that widespread support exists for a policy that allows individuals to adjudicate legitimate claims for permanent residency without the risk that they will be separated from their loved ones before those claims are resolved.