**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-60579**
_____

**JULIO ALVARADO-MOLINA,**

                                                    **Petitioner,**

**VERSUS**

**IMMIGRATION AND NATURALIZATION SERVICE,**

                                                    **Respondent.**

_____

Petition for Review of an Order
of the Board of Immigration Appeals
(A71-774-176)
_____

February 25, 2002

Before GARWOOD, DeMOSS, and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Julio Alvarado-Molina ("Alvarado") appeals the Board of
Immigration's ("BIA") dismissal of his appeal regarding his
application for asylum and for withholding of deportation.  We
affirm.

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## BACKGROUND

Alvarado was a member of a rural cooperative in his native country of Honduras. Pursuant to a land reform law, rural cooperatives gained title to land not being used by the original owners. In 1987, Alvarado received a portion of land from the cooperative. As a result of his membership in the cooperative, former land owners allegedly threatened him. Alvarado claims that he directly or indirectly received threats on four occasions. First, in 1987, Alvarado claims that two men employed by the former owners of his land threatened him with death if he did not leave the cooperative. The head of his cooperative told Alvarado not to take the threat too seriously and that it was a "passing threat." Soon after this first threat, Alvarado claims to have received a second threat that was relayed to him by a friend, from an unidentified man who was hanging around the place where Alvarado was constructing his home. Alvarado apparently then moved to a nearby town. After moving to this town, Alvarado was told that one night armed men had surrounded his completed house but never entered or disturbed his family. Alvarado and his family then moved into his mother-in-law's house. Alvarado claims that this is where he received his fourth threat in the form of two men dressed in military uniforms. The men arrived at his mother-in-law's house and inquired about Alvarado's whereabouts. After the last alleged threat, Alvarado fled Honduras and entered the United States near

2

Hidalgo, Texas, without inspection on March 8, 1991.  Alvarado was charged with entering the country without inspection in violation of former § 241(a)(1)(B) of the Immigration and Nationality Act. *See* 8 U.S.C. § 1251(a)(1)(B).

Alvarado filed an application for asylum, claiming that he would be persecuted for his membership in a rural cooperative group if he returned to Honduras.  The Immigration Judge denied his requests for asylum and for withholding of deportation.  The BIA dismissed Alvarado's appeal on the grounds that he had failed to show past persecution or a well-founded fear of future persecution in Honduras.  The BIA then gave Alvarado thirty days to voluntarily leave the country, with that order converting automatically into an order of deportation if he failed to depart.  On appeal, Alvarado claims that the BIA erred in denying asylum, incorrectly refused to withhold his removal from the United States, erred in not considering his grant of Temporary Protected Status ("TPS") and violated his procedural due process rights.

## DISCUSSION

Standard of Review

We review the BIA's factual findings regarding the ineligibility of asylum under the substantial evidence standard. *See* **Witter v. INS**, 113 F.3d 549, 552 (5th Cir. 1997) ("We will affirm an order of deportation by the BIA if supported by 'reasonable, substantial, and probative evidence on the record

3

considered as a whole.'"). The petitioner has the burden to show that "the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Jukic v. INS*, 40 F.3d 747, 749 (5th Cir. 1994).

Alvarado's denial of asylum

First, Alvarado argues that the BIA erred in denying asylum. To qualify for asylum, Alvarado must show either that he suffered from past persecution or that he has a well-founded fear of future persecution due to "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1). We have defined persecution as harm or suffering inflicted in order to punish one for possessing some belief or characteristic the persecutor has sought to overcome. *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994). Although physical harm is not necessary, the harm must generally deprive some essential of life such as liberty, food, housing, or employment. *Mikhael v. INS*, 115 F.3d 299, 303 n.2 (5th Cir. 1997).

While the four threats that Alvarado allegedly received may be troubling, they do not rise to the level of past persecution. As an initial matter, we cannot consider two of the four threats as persecution, because Alvarado has failed to provide any evidence that they were motivated due to his membership in a rural

4

cooperative.[2]  *See* **Faddoul**, 37 F.3d at 188 (requiring a connection between the feared persecution and the alien's race, religion, nationality, or other qualifying characteristic).  In regards to the other two threats, they apparently came from the former landowners who threatened Alvarado, once directly and another time indirectly through his friend.  Courts have held that mere threats normally are not sufficient to qualify as past persecution, unless they are so immediate and menacing as to cause significant actual suffering or harm.  *See, e.g.*, **Boykov v. INS**, 109 F.3d 413, 416 (7th Cir. 1997) (stating that in a vast majority of cases "mere threats will not, in and of themselves, compel a finding of past persecution"); *see also* **Lim v. INS**, 224 F.3d 929, 936 (9th Cir. 2000) (refusing to find error in denial of asylum when alleged past persecution was only a threat); **Cigaran v. Heston**, 159 F.3d 355, 358 (8th Cir. 1998) (same).  Alvarado has failed to show that the threats were of such a menacing and immediate nature that they caused actual significant harm.

Alvarado also maintains that the threats establish a well-founded fear of future persecution.  The BIA offered three reasons in rejecting this claim: (1) Alvarado's family allegedly had been living undisturbed in Honduras for the past ten years; (2) the threats had occurred over ten years ago; and (3) Alvarado failed to

---

[2]  As the BIA did not address the matter, we assume, arguendo only, that membership in a rural cooperative qualifies as one of the grounds specified in the statute.

show he could not relocate to another part of the country. After reviewing the record, we find that the BIA erred in making the first two findings. First, nothing in the record supports the BIA's assumption that Alvarado's family remained in Honduras after 1991. Although his family eventually came to the United States, it is unclear when they exactly arrived. Second, in noting that the threat had occurred over ten years ago, the BIA made an unwarranted assumption that the situation in Alvarado's hometown had changed in the intervening period. The record does not support that assumption.

However, even if the BIA erred in making these two factual findings, Alvarado cannot receive relief because he has failed to show that he could not have relocated to another part of the country. *See Matter of C-A-L*, 21 I. & N. Dec. 754 (BIA 197), 1997 WL 80985 (holding that a petitioner must show that he faced country-wide persecution). Alvarado concedes that he has not attempted to move to another area in Honduras, but he correctly points out that if the national government is the persecutor, the burden is on the INS to show that the persecution is limited to only certain areas of the country. *Abdel-Masieh v. INS*, 73 F.3d 579, 587 (5th Cir. 1996). On the other hand, if the persecution involves non-governmental action, the alien has the burden to show a country-wide persecution. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 445-46 (5th Cir. 2001) ("Today we hold that, at least for

cases where the applicant does not show past persecution, when the applicant for asylum does not demonstrate that a national government is the persecutor, the applicant bears the burden of showing that the persecution is not geographically limited in such a way that relocation within the applicant's country of origin would be unreasonable."); *see also, **Mazariegos v. Office of U.S. Atty. General**, 241 F.3d 1320, 1325-27 (11th Cir. 2001) (finding that the BIA did not err by requiring that an alien, seeking asylum on the basis of non-governmental persecution, show a threat of persecution nation-wide); **Etugh v. INS**, 921 F.2d 36, 39 (3d Cir. 1990) (same); **Cuadras v. INS**, 910 F.2d 567, 571 n.2 (9th Cir. 1990) (same).

To support his claim that the national government was responsible for his alleged persecution, Alvarado offers primarily only his subjective speculation, noting, for example, that the police were unresponsive to his complaints. Mere subjective opinion, however, is not sufficient; an alien must also provide an objective, reasonable basis for his fear of persecution. **Mikhael**, 115 F.3d at 304. In short, Alvarado has not shown that the national government is responsible for his alleged persecution, or that he cannot move elsewhere in Honduras. Accordingly, his failure to show past persecution or a well-founded fear of future persecution bars his asylum claim.

Alvarado's withholding of deportation claim

Second, we reject his claim for withholding of deportation. This claim requires a clear probability of persecution standard, which is even more stringent than the well-founded fear standard for asylum. *Castillo-Rodriguez v. INS*, 929 F.2d 181, 185 (5th Cir. 1991). Because Alvarado failed to meet the requirements of the asylum claim, he necessarily cannot succeed on the withholding of deportation claim.

Alvarado's grant of Temporary Protected Status

Alvarado also alleges that the BIA erred by not considering his grant of a TPS. Prior to the BIA's decision, Honduras was struck by Hurricane Mitch, causing the Attorney General to designate Honduras for Temporary Protected Status.[3] The initial period was from January 5, 1999, to July 5, 2000 and was subsequently renewed through July 5, 2002. 65 Fed. Reg. 30,438 (2000). This period was just recently extended further until July 5, 2002. 66 Fed. Reg. 23,269 (2001). Alvarado registered for TPS within the required time frame.[4] Though Alvarado never informed the BIA of such status before it made its decision, he asserts

---

[3] We pause to note that the granting of a TPS designation was premised on an environmental disaster and **not** on a finding that there was an armed conflict or political conflict which would pose a threat to the national's personal safety. The TPS designation, therefore, does not affect the determination by the Board that Alvarado did not suffer past persecution or have an apprehension of future persecution. The TPS designation had nothing to do with the political climate in Honduras.

[4] It is unclear whether Alvarado has sought to renew his TPS since the most recent extension.

8

that, through a cursory consideration of his case, it should have been apparent that he was eligible.

Assuming Alvarado is correct in his assertion that the BIA had constructive notice of his TPS, it would still not affect the outcome. Under 8 U.S.C. § 1254a(a)(1)(A), the Attorney General "may grant [an] alien temporary protected status in the United States and shall not remove the alien from the United States during the period in which such status is in effect." 8 U.S.C. § 1254a(a)(1)(A). Alvarado would have this Court believe that the "shall not remove" language precludes any orders to deport as well. In other words, he would have us read "shall not remove" to mean "shall not remove or order to remove." Alvarado's view, however, is too expansive. A grant of Temporary Protected Status is just that - temporary. It is a stay or suspension of deportation. As such, it has the power to suspend the BIA's order but does not invalidate it. *Cf.* **Gomez v. INS**, 947 F.2d 660, 664-65 (2d Cir. 1991) ("[Temporary Protective Status] was designed to supplement - rather than eviscerate or erode - well-established immigration law concerning political asylum and withholding of deportation."); **Augusta v. INS**, 149 F.3d 1167, *2 at n. * (4th Cir. 1998) (table case) (allowing an alien to remain in the country while under a designation of TPS but noting that such designation does not establish eligibility for asylum). Therefore, once Alvarado's protected status has expired, the order can take effect and the

9

thirty-day voluntary departure period can begin.[5]

<u>Alvarado's denial of due process claim</u>

Finally, Alvarado contends that his procedural due process rights were violated when the BIA, in denying his asylum claim, made two incorrect factual assumptions regarding the location of his family and the effect of time on his persecution claim.  In an administrative proceeding, a petitioner must show substantial prejudice to succeed on a denial of the due process claim. ***Calderon-Ontiveros v. INS***, 809 F.2d 1050, 1052 (5th Cir. 1986).  As mentioned above, Alvarado's claim that the BIA did not consider the pattern and practice of singling out rural cooperative groups is rejected because he has failed to show that this purported persecution existed country-wide.[6]

<u>Alvarado's motion to stay deportation</u>

Alvarado has asked this Court to suspend his deportation in light of his grant of TPS and also until the BIA can consider his

---

[5]  By allowing the thirty-day period to begin after the TPS has expired, the inequities argued by Alvarado of allowing the order to stand and toll his thirty-day period are eliminated.

[6]  Alvarado also offered two pieces of evidence on appeal.  We generally do not consider evidence and issues that were not presented during the administrative hearing.  ***Witter v. INS***, 113 F.3d 549, 554 (5th Cir. 1997).  Moreover, it is unclear when Alvarado learned of the new evidence or why he didn't present it earlier.  Alvarado is free, however, to attempt to present this evidence in his motion to reopen the case before the BIA.  8 C.F.R. § 3.2(c); ***Meghani v. I.N.S.***, 236 F.3d 843, 848 (7th Cir. 2001).

10

motion to reopen his case based on new evidence.  This Court has stated that a suspension of deportation is a grant of mercy. *Perales v. Casillas*, 903 F.2d 1043, 1051 (5th Cir. 1990). "Suspension of deportation is a matter of discretion and of administrative grace, not mere eligibility; discretion must be exercised even though statutory prerequisites have been met." *Hintopulos v. Shaughnessy*, 353 U.S. 72, 77 (1957).

As to Alvarado's motion to reopen, there is little statutory guidance on the issue as the authority for such motions derives solely from regulations promulgated by the Attorney General. *Pritchett v. INS*, 993 F.2d 80, 83 (5th Cir. 1993) (citing *INS v. Doherty*, 502 U.S. 314 (1992)).  As such, we turn to these regulations for guidance.  Under 8 C.F.R. § 3.2, the BIA has the power to reopen deportation proceedings under certain circumstances but is not affirmatively required to do so.  8 C.F.R. § 3.2(a); *Pritchett*, 993 F.2d at 83.  This same section has a provision for stays of deportation, stating in relevant part:

> [T]he filing of a motion to reopen or a motion to reconsider shall not stay the execution of any decision made in the case.  Execution of such decision shall proceed unless a stay of execution is specifically granted by the Board, the Immigration Judge, or an authorized officer of the Service.

8 C.F.R. § 3.2(f).  It is our view, therefore, that a motion to stay deportation, in the present case, would more properly be made to the BIA.

11

Alvarado's motion to stay deportation due to his grant of TPS has already been considered above. The decision was made by Congress when it allowed such a stay and Alvarado cannot be deported until the TPS has expired. At that time his thirty-day voluntary departure period will begin.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the BIA did not err in denying Alvarado's claims and that Alvarado was not denied due process. We further hold that the BIA did not err, in the present case, by failing to recognize Alvarado's grant of TPS but do find that such a grant suspends the BIA's deportation order until the TPS has expired.

**AFFIRMED.**