# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 13, 2010

No. 09-60275

Lyle W. Cayce
Clerk

JOSE SANTOS NATAREN ESCOBAR,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent.

*consolidated with*

No. 09-60276

EVIN ONEL NATAREN LOPEZ,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent.

*consolidated with*

No. 09-60277

JOSE ANTONIO NATAREN ESCOBAR,

Petitioner,

v.

No. 09-60275

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent.

On Petition for Review from an Order of the
United States Board of Immigration Appeals
A088 745 173
A088 745 174
A088 745 175

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

The United States Board of Immigration Appeals (BIA) affirmed the finding of the immigration judge that the three petitioners—Jose Santos Nataren Escobar (Santos), Evin Onel Nataren Lopez (Lopez), and Jose Antonio Nataren Escobar (Antonio) (together, Natarens)—are Honduran citizens who entered the United States without inspection, and are subject to removal. The Natarens now appeal to this court, contending reversible error exists in a failure to suppress evidence in the removal proceedings or purported violations of due process and of the Department of Homeland Security's internal regulations. In the alternative, they assert that they should be subject to withholding of removal. Lacking such violations or sufficient grounds for withholding of removal, we affirm the decision of the BIA.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 09-60275

**I**

The Department of Homeland Security's Immigration and Customs Enforcement (ICE) agency detained the Natarens during an early morning immigration raid in Maryland. This raid was the culmination of an eighteen-month investigation, though the Natarens were not actually targets of the raid. Though ICE obtained warrants in connection with the raid, it did not have a warrant for the house in which the Natarens were discovered. Upon finding a van driven by one of the raid's targets parked by his neighbor's home, armed law enforcement obtained entrance to that home from its owner and occupant Alfonso Madrid Acosta (Acosta). Other agents may or may not have already entered through another door. ICE agents then spoke to the various individuals present in the home. Included in that group were the Natarens, who paid rent to Acosta and shared the home with him. The Natarens were interviewed by ICE agents and revealed themselves to have entered the United States without inspection. They subsequently provided sworn written statements admitting that they entered the United States illegally.

ICE then transported the Natarens to Texas, where they were brought before an immigration judge. The immigration judge found no reason to suppress evidence collected as a result of the ICE raid, pursuant either to the exclusionary rule of the Fourth Amendment or to due process under the Fifth Amendment and internal ICE regulations.

The immigration judge also rejected the Natarens' argument that they should be subject to withholding of removal. In support of their request for withholding, the Natarens noted that they are members of the National Party, one of two major parties in Honduras. Though Lopez is not a member of the party, the Natarens argue that their family as a whole is associated with the party. They contend that as a result they were subjected to violence when living in Honduras.

3

No. 09-60275

As evidence of this violence, they submitted the following: taxis owned by Antonio were violently robbed three times in Honduras during which the drivers were told to find other routes, and party paraphernalia on the cabs was removed; Antonio's father-in-law was killed in Honduras by Jeremiah Fuentes, whom Antonio asserts is a member of the rival Liberal Party; Antonio's wife received death threats in Honduras; and a relative of Jeremiah Fuentes, Alton Fuentes, later shot Lopez in the leg. The Fuentes family then contributed towards Lopez's medical bills in exchange for Lopez not assisting the Honduran police in their investigation. Though Santos stated at trial that he had never personally had any problems as a result of his family's politics, he testified that he now feared that he would. By contrast, the government contended that Alton Fuentes is a member of a violent gang, and that the Natarens were victims of gang and economic violence, rather than political intimidation.

The immigration judge found withholding of removal unwarranted. The BIA found no reason to disturb the conclusions of the immigration judge. As a result, it affirmed. The Natarens now appeal to this court, and their cases have been consolidated.

## II

We have statutory jurisdiction to review the decision of the BIA under the Immigration and Nationality Act.[1]  We review constitutional claims in immigration proceedings de novo.[2]  Per the statute, findings of fact are conclusive unless any reasonable adjudicator would have to find otherwise.[3] Therefore, this court will not reverse a finding of fact "so long as it is not

---

[1] 8 U.S.C. § 1252.

[2] *Ali v. Gonzales*, 440 F.3d 678, 681 (5th Cir. 2006) (per curiam) (citing *Soadjede v. Ashcroft*, 324 F.3d 830, 831 (5th Cir. 2003) (per curiam)).

[3] 8 U.S.C. § 1252(b)(4)(B).

No. 09-60275

capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach."[4]  Our authority is to review the decision of the BIA, and we have previously held that where the immigration judge's decision has an "impact" on the BIA's determination we may review it as well.[5]  Where, as here, the BIA largely relies on the immigration judge's findings, it is appropriate to review them.

## A

We will address the Natarens' suppression and due process claims first. The Natarens assert that they are entitled to have the evidence forming the basis of this removal action suppressed in accordance with the Fourth Amendment.  The Supreme Court held in *Wong Sun v. United States* that both products of unconstitutional searches and the fruits thereof are subject to exclusion in criminal proceedings under the Fourth Amendment unless sufficiently attenuated.[6]

The Natarens bring this challenge in an immigration proceeding, which is a civil, not criminal, proceeding.[7]  As a result, the potency of the exclusionary rule is not clear.  In *INS v. Lopez-Mendoza*, with Justice O'CONNOR writing for the majority, the Supreme Court held that the exclusionary rule should not be applied in civil deportation hearings.[8]  The Natarens rely, instead, on negative inferences drawn from a later section of Justice O'CONNOR's opinion joined only

---

[4] *Mai v. Gonzales*, 473 F.3d 162, 164 (5th Cir. 2006) (quoting *Pritchett v. INS*, 993 F.2d 80, 83 (5th Cir. 1993) (per curiam)).

[5] *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (per curiam).

[6] 371 U.S. 471, 487-88 (1963).

[7] *Ali*, 440 F.3d at 681.

[8] 468 U.S. 1032, 1050 (1984).

5

by a plurality, suggesting that the Court had not reached the issue of "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained."[9]  In the instant case, we need not reach the question of whether an egregious violation of the Fourth Amendment would warrant suppression. Indeed, the Natarens have not demonstrated any violation of the Fourth Amendment, egregious or not, and the burden of proof is on the Natarens to show that exclusion is warranted.[10]

The Natarens argue that their home was searched without a warrant, and that Acosta's consent was defective.  This argument is unavailing.  Here, a co-occupant of the home consented to the entrance of law enforcement agents.  The Supreme Court has long held that a co-occupant may consent to a search of shared premises for one not present.[11]  Thus, Acosta, an individual who lived in the home, had authority to allow the agents into the home while the Natarens slept.  Once in the home, the agents needed no further consent to speak to the Natarens.  As a result, Acosta's consent was effective.

The Natarens contend that because Acosta was their landlord, his consent was invalid under *Chapman v. United States*.  In that case, the Supreme Court held that a landlord who owned but did not live in a property, and who possessed limited rights of access, could not consent to a police search of the home.[12]  As in the instant case, however, the Court has made clear that an individual also living at a property can consent to a search on behalf of a cotenant not currently

---

[9] *Id.* at 1050-51 (plurality).

[10] *Matter of Ramirez-Sanchez*, 17 I. & N. Dec. 503, 505 (BIA 1980).

[11] *United States v. Matlock*, 415 U.S. 164, 170 (1974).

[12]  365 U.S. 610, 616-17 (1961).

6

objecting.[13] There is no reason that a financial relationship between roommates should limit this power to consent. Indeed, this exception is sufficiently broad to allow Acosta to provide consent even if he had not actually lived in the home, but merely reasonably appeared to the officers to be an occupant.[14] Since a reasonable appearance of cotenancy is sufficient for consent, there is no reason that receiving rent from an actual cotenant should render Acosta's consent defective.

The Natarens also argue that the purported entrance of other agents prior to Acosta's consent requires suppression of all evidence from the raid. The immigration judge and the BIA found that there was insufficient evidence of such an entrance, and the record does not compel a contrary view. Moreover, we note that Acosta's effective consent cures any defect through the inevitable discovery exception to the exclusionary rule. Where evidence would be discovered through an alternative process, unrelated to a purported violation, the Supreme Court has held that the evidence may be admitted.[15] Here, even accepting the Natarens' factual account, the agents entering with consent were only moments behind the agents entering without consent and Acosta, unaware of their presence, would have admitted the others regardless. Thus, there are no grounds for application of the exclusionary rule.

In the alternative, presupposing both that a violation did occur and that an egregious violation would warrant exclusion, exclusion still is not justified. The *I.N.S. v. Lopez-Mendoza* plurality offered the egregious example of *Rochin v. California*.[16] In *Rochin*, police officers watched a criminal narcotics suspect

---

[13] *Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990).

[14] *See id.* at 186.

[15] *Nix v. Williams*, 467 U.S. 431, 444 (1984).

[16] 468 U.S. 1032, 1051 (1984) (plurality).

swallow two capsules, and when they could not manually extract the capsules themselves, handcuffed the suspect and took him against his will to a hospital where his stomach was pumped to recover the capsules.[17]  The chief evidence in that case was the capsules recovered through the induced vomiting.[18]  Using *Rochin* as an example of "egregious" violations of the Fourth Amendment, it is clear that the facts of this case do not rise to the requisite level.  Thus, even supposing such a rule and violation, there would nonetheless be no cause for exclusion.

**B**

The Natarens' theory that two purported violations of ICE regulations require suppression of evidence is similarly unavailing.  The Natarens direct this court to an operating manual for the Immigration and Naturalization Service directing agents to give apprehended aliens a notice of rights.  The Natarens fail, however, to indicate the rights of which they were not given notice.  Moreover, we review the factual determination of whether a reasonable immigration judge and the BIA could have found notice was given, and there is support for their finding that no violation occurred.

Similarly, there is support for the immigration judge's finding that there was no violation of applicable provisions of the Code of Federal Regulations with respect to reasonable suspicion for interrogation and the BIA's affirmance thereof.  To that end, the Natarens rely on a provision permitting only a brief detention for interrogation based upon reasonable suspicion.[19]  Below, the immigration judge found that ICE agents gained Acosta's consent believing that the raid's original target—the van owner—was inside the home, and that this

---

[17] 342 U.S. 165, 166 (1952).

[18] *Id.*

[19] 8 C.F.R. § 287.8(b).

provided reasonable suspicion to speak to the other adults in the house. Those adults then revealed their undocumented status. The conclusion that this regulation was not violated is not unreasonable, and therefore we uphold the BIA's affirmance thereof. We also note in the alternative that the section of Code of Federal Regulations the Natarens rely upon does not create an enforceable right: "These regulations do not, are not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal."[20] Thus, there is no reason to believe the drastic remedy of suppression would be warranted even if the regulations had been violated.

These same facts dispose of the Natarens' contention that they were unreasonably "seized." They cite to *California v. Hodari D.*, arguing that they were "seized" at some point prior to revealing their undocumented status,[21] and that their statements must be suppressed as a result. If applicable here, that case requires only an agent's reasonable suspicion prior to seizure.[22] We have not disturbed the immigration judge's findings of facts regarding the van, and those findings provide grounds for such a reasonable suspicion for the ICE.

## C

Lastly, the Natarens allege that their Fifth Amendment rights were violated by a BIA review that they insist failed to address their evidence or arguments. This court has held that individuals in removal hearings have a right to fundamental fairness under due process.[23] The Natarens allege that the

---

[20] 8 C.F.R. § 287.12.

[21] 499 U.S. 621, 623-24 (1991).

[22] *Id.* at 624.

[23] *Bustos-Torres v. INS*, 898 F.2d 1053, 1055 (5th Cir. 1990) (citing *Bridges v. Wixon*, 326 U.S. 135 (1945)).

No. 09-60275

BIA violated that right to fundamental fairness by ignoring their purported evidence of an ICE pattern of bad behavior tantamount to an egregious violation of the Fourth Amendment and by failing to address ICE's lack of a warrant. In light of the factual finding of consent that we have not disturbed on appeal, neither issue is legally relevant. Thus, this issue is not a due process violation. Further, the Natarens have provided two sentences in different paragraphs asserting without citation that the BIA erred in its review of the immigration judge's requirement that the Natarens make a prima facie case for suppression before entertaining testimony on that subject. This court has previously held that failure to cite any authority in a brief constitutes abandonment of an issue.[24] Secondarily, it is notable that the Natarens have not offered any details regarding the testimony they wish to offer. The burden lies on the Natarens to show prejudice,[25] and there is no such showing. As a result, a hypothetical violation in the hearing below would be harmless.[26]

## III

We now address the Natarens' alternative theory that they are eligible for withholding of removal. As with the factual determinations above, we will disturb the conclusions of the immigration judge and the BIA only if they were inconsistent with the findings of any reasonable adjudicator.[27] We also will again consider the findings of the immigration judge, as those findings had a significant impact on the BIA's determination.[28]

---

[24] *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994).

[25] *Ali v. Gonzales*, 440 F.3d 678, 681 (5th Cir. 2006) (per curiam).

[26] *Id.* at 681-82.

[27] *Mai v. Gonzales*, 473 F.3d 162, 164 (5th Cir. 2006) (quoting *Pritchett v. INS*, 993 F.2d 80, 83 (5th Cir. 1993) (per curiam)).

[28] *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (per curiam).

For withholding of removal, an applicant must show that "'it is more likely than not' that his life or freedom would be threatened by persecution on account of one of the five categories mentioned under asylum: race, religion, nationality, membership in a particular social group, or political opinion."[29] As a result of recent statutory changes, an applicant must now show that the protected classification will be at least one central reason for persecution.[30] The persecution must come at the hands of the government, or with its consent or acquiescence.[31] The Natarens theorize that withholding is justified by their family's longstanding membership in the National Party in concert with the acts of violence they describe. As the findings below were not unreasonable on this point, we uphold the BIA's affirmance of the immigration judge.

The BIA found no reason to disturb the immigration judge's determination that the Nataren family was not a social group entitled to protection on account of their political views. Though the Natarens advance one theory for the lamentable difficulties they have faced, there are other reasonable views. The immigration judge found that Lopez's shooting was linked to the shooter's gang membership, rather than any political affiliation. Similarly, the immigration judge found that since Santos left Honduras before the relevant incidents, he could not have done so on the basis of political oppression. Lastly, the immigration judge concluded that, in light of the taxi robbers' warning to find a different route, Antonio was the victim of economic, not political, violence. While the Natarens contend that the BIA should have reversed this finding on the basis of their "consistently" maintaining that these crimes had political motives, there is evidence in the record to the contrary. For instance, Antonio's

---

[29] *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002) (citing 8 C.F.R. § 208.16(b)(1)).

[30] *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (quoting 8 U.S.C. § 1158(b)(1)(A)).

[31] *See Adebisi v. INS*, 952 F.2d 910, 913-14 (5th Cir. 1992).

wife described her father's shooting as the result of the shooter's drunkenness. Moreover, the Natarens repeatedly reference police involvement. Indeed, Lopez claimed to be fearful because his shooter might think that he reneged on his promise not to speak to the police. This information makes it difficult for the Natarens to demonstrate government acquiescence. As a result, it cannot be said that no reasonable adjudicator would have denied withholding of removal.

\*       \*       \*

Finding no reversible error in the BIA's affirmance of the immigration judge's order, we AFFIRM.