**Yue Hua CHEN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–73187.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Decided Dec. 19, 2003.

Jisheng Li, Esq., Honolulu, HI, for Petitioner.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Office of the District Counsel, Honolulu, HI, Ronald E. LeFevre, Chief Legal Officer, San Francisco, CA, OIL, Jocelyn Lopez Wright, Linda S. Wendtland, Esq., Washington, DC, for Respondent.

Before REINHARDT, THOMAS, and CLIFTON, Circuit Judges.

MEMORANDUM *

Yue Hua Chen, a native and citizen of China, petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of an immigration judge's ("IJ") denial of her application for asylum and withholding of removal. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review.

Where, as here, the BIA conducts a *de novo* review of the IJ's decision, our review is limited to the BIA's decision. *Singh v. Ashcroft*, 301 F.3d 1109, 1111 (9th Cir.2002). Here, the BIA conducted a *de novo* review, citing to portions of the record not referred to by the IJ, providing reasons to find Chen not credible that were not cited by the IJ, explicitly affirming the IJ's decision with respect to voluntary departure, neglecting to mention other aspects of the IJ's decision, and concluding with the following statement, "Therefore, because we are in agreement with the decision of the Immigration Judge, and because we are not persuaded by any of the respondent's arguments on appeal, we affirm that decision based upon and for the reasons indicated therein." Use of the word "therefore" indicates that affirmance relies on the reasons articulated in the de novo review just conducted. While the language "based upon and for the reasons indicated therein" often indicates adoption of an IJ's decision, that language must be read in context. Here, it does not indicate that the BIA adopted the IJ's reasons as its own.

We will deny the petition for review if the BIA's determination is supported by substantial evidence. *Id.* Although we review credibility findings under the deferential substantial evidence standard, in order to make an adverse credibility finding,

"[t]he BIA must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Valderrama v. INS*, 260 F.3d 1083, 1085 (9th Cir.2001) (per curiam) (internal quotation marks and citation omitted). The discrepancies must go to the heart of the asylum claim. *Id.* We must reverse "an adverse credibility determination that is based on 'speculation and conjecture' and is not supported by evidence in the record." *Salaam v. INS*, 229 F.3d 1234, 1238 (9th Cir.2000) (citing *Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir.1999)). The reasons given by the BIA in this case are all inadequate to support an adverse credibility finding because they are either based on clear misreadings of the record or impermissible speculation and conjecture. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir.2000).

■ The BIA gave four reasons for disbelieving Chen. The first reason it gave for its adverse credibility determination was that Chen allegedly did not know the denomination of her uncle's church group, but testified that her church group was like her uncle's. The government conceded at oral argument that this was incorrect and based on a misreading of the record. Chen never testified that her religious group was like her uncle's.

■ The second reason given by the BIA for rejecting Chen's testimony is an alleged inconsistency in her testimony that she did not attend church in Saipan because she did not know anyone with whom to attend church, but that she saw a friend in Saipan. However, it is not inconsistent to see a friend in Saipan, yet still not know anybody with whom to attend church. The transcript of Chen's testimony at the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

hearing before the IJ reveals that the acquaintance in Saipan was not a very close friend, and the IJ did not inquire whether the friend was of the same religious affiliation.

■ The third reason given by the BIA for finding Chen incredible was the alleged inconsistency in fleeing China to worship as she chose, but not forming ties to religious groups in Saipan or Guam. However, there is no inconsistency between fleeing a country because one is persecuted or fears persecution due to one's religious practice and not practicing devoutly after leaving. Many petitioners flee their country because of political persecution without presenting any evidence that they have sought out international branches of their former political party upon arriving in America. And yet, we would not find this inconsistent or incredible. There is no reason to view religion differently.

Chen never testified to being very devout. She testified to attending a private church a few times, being arrested and sentenced to a year of prison when she was caught, and being exempted from serving that sentence because she was nursing a child. Because the BIA found her not credible, it never determined whether this testimony established either past persecution, whether it established a well-founded fear of future persecution, whether any such persecution was based on religion, or whether on imputed religious practice. But Chen's level of religious devotion simply cannot sustain a finding that she is not believable.

Moreover, when asked why she did not attend church in Saipan, Chen testified that she did not know anyone with whom to go to church, she didn't know English, and was afraid of being spotted by immigration officials. The BIA's finding that this was "inconsistent" was not based on any record evidence, but rather pure conjecture that was not reasonably related to the record evidence. It is completely plausible that a religious refugee might decide not to attend a worship service conducted in a foreign language at a church where the applicant did not know anyone in a country where she feared contact with immigration officials. Chen was never questioned about her infrequent church attendance in Guam. Because her infrequent church attendance is not per se inconsistent with her asylum claim, she cannot be faulted for failing to volunteer an explanation.

■ The final reason given by the BIA for rejecting Chen's testimony was an alleged inconsistency as to the number of Chen's children, and an alleged delay in bringing the fact that she had a second child to the attention of the IJ. However, this conclusion is based on a combined misreading of the record and impermissible speculation. Chen did not wait until the end of her hearing to mention her second child. Chen told the asylum officer who interviewed her about the second child, and that child was handwritten onto her application. She also told the IJ about the second child at an earlier hearing. Her narrative referenced the second child repeatedly, as she explained that she was excused from serving a one year prison sentence because she was nursing that child. Chen provided a reason for not initially mentioning the child on her asylum application: After she left China, her husband gave the child away to a childless couple. The BIA cited this explanation, but failed to provide any reason why it was inadequate. One who gives up a child for adoption cannot be faulted for not continuing to refer to the child as one's own. Thus, there is no unexplained delay in mentioning the second child that can support an adverse credibility finding. What Chen did fail to mention until the end of

her hearing was that she had gone into hiding during her second pregnancy for fear of undergoing a forced abortion and that she was fined for having the second child. However, these facts had nothing to do with Chen's claim of religious persecution, and she did not attempt to claim persecution based on resistance to China's population control policy. In fact, her lawyer reiterated at the end of the hearing that she was not making such a claim. Thus, any delay in mentioning these facts cannot support an adverse credibility finding.

In sum, the BIA's adverse credibility finding is not supported by specific, cogent reasons which are substantial and bear a legitimate nexus to the finding. *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir. 1998). No remand is necessary for a further investigation of Chen's credibility. *See He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir.2003) ("The INS, having lost this appeal, should not have repeated opportunities to show that Mr. He is not credible any more than Mr. He, had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). We remand, however, for determination of the remaining issues relating to eligibility for asylum and withholding of removal. *INS v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

**PETITION FOR REVIEW GRANTED; REMANDED.**

CLIFTON, Circuit Judge, concurring in part and dissenting in part.

CLIFTON, Circuit Judge.

I agree with my colleagues that the petition should be granted and this case should be remanded to the BIA. On remand, however, the BIA should have the opportunity to clarify its conclusions with respect to Chen's credibility; it should not be required to treat her credibility as established.

The adverse credibility determination regarding Chen's testimony was originally made by the immigration judge ("IJ") and was, in large part, expressly based upon the IJ's observations of her demeanor while testifying. Credibility determinations that are based on an applicant's demeanor are accorded "special deference." *Singh–Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir.1999). That is logical, because the IJ has the advantage on us and on the BIA with regard to evaluating Chen's testimony—the IJ actually observed the petitioner while she testified. Such deference is not unique to the immigration context. It is, rather, routine in our appellate review of factual findings made by triers of fact.

The majority disregards that ground for the adverse credibility determination solely because it was not expressly mentioned by the BIA in its decision. The BIA discussed some specific testimonial inconsistencies which it identified in Chen's testimony as supporting the IJ's adverse credibility determination. Nothing in the BIA's discussion suggested, however, that the BIA affirmatively disbelieved any other ground identified by the IJ in support of the IJ's adverse credibility determination. Rather, the BIA concluded by saying that it was "in agreement with the decision of the Immigration Judge" and explicitly affirming the IJ's decision "based upon and for the reasons set forth therein." In prior cases, the language "based upon and for the reasons set forth" has been deemed sufficient for the BIA to adopt the IJ's findings. *See, e.g., Al–Harbi v. INS*, 242 F.3d 882, 887 (9th Cir.2001); *Osorio v. INS*, 99 F.3d 928, 931 (9th Cir.1996); *Alaelua v. INS*, 45 F.3d 1379, 1381 (9th Cir.1995).

There is no logical reason to ignore that language in this case. The majority cites

the BIA's use of the transitional word "[t]herefore," as justification for doing so, but its inference is not persuasive. The words "in agreement with the decision of the Immigration Judge" and "for the reasons set forth therein" are clear. There would have been no reason for the BIA to include those words if it intended to base its decision exclusively on the grounds it had already discussed in its own decision. Those words mean just what they say—that the BIA relied as well on the other reasons set forth in the IJ's decision.

Substantively, it is implausible to conclude that the BIA rejected the IJ's demeanor finding. It is far more likely that the BIA intended to incorporate that finding as part of the "reasons set forth" in the IJ's decision, but did not discuss it separately because it was not in a position to observe Chen's demeanor and thus had nothing to add. The majority does not identify anything incorrect or unreliable *about the IJ's demeanor finding. It is* wrong to disregard it.

The BIA's decision here may have been somewhat unusual, in both adopting the IJ's decision and offering its own discussion. More commonly, the BIA simply adopts the IJ's decision in a brief order or offers a self-contained decision of its own. But that should not permit us to disregard what the BIA said. We previously observed that "[i]f the BIA had adopted the IJ's decision while adding its own reasons, we would have to review both decisions." *Chand v. INS*, 222 F.3d 1066, 1072 n. 7 (9th Cir.2000). That should be our approach here. At a minimum, we should remand to the BIA in order to obtain clarification as to what its adverse determination was based upon.

As for the reasons individually discussed by the BIA (and thus recognized by the majority) in concluding that Chen's testimony was not credible, I concur with much of the majority's reasoning. I do not agree, however, that the suspicion regarding Chen's infrequent church attendance over the three years she lived on Guam is "speculation and conjecture" that was not reasonably supported by evidence in the record.

The majority understates the religious basis for Chen's asylum claim. She did more than attend a private church in China a few times. Her brief said that she "joined" a church and became a Jehovah's Witness. Her asylum application said that she "joined a church-affiliated organization" in China. Perhaps more importantly, her application (as translated) also specifically referred to religion as part of her motivation for entering the United States: "I heard that every U.S. citizen enjoys the freedom of religion, human rights, and democracy in this beautiful U.S. territory, Guam. Several friend of mine and me therefore came to our dream land, this U.S. territory which provides freedom and is believing in God." [Errors in original translation.] Once she arrived in Guam, however, she attended church only twice in a period of more than three years. That behavior does seem inconsistent with Chen's claim. If she was truly drawn to the United States by the freedom of religion—which is what her application said—why didn't she do more to take advantage of that freedom after she got here? There are good answers that could be given in response to that question, but Chen did not provide one, either to the IJ or to us.

The majority says that failure to practice religion after entering the United States is no more suspicious than failure to continue political activity, but that analogy misses the mark. A person who flees her country to escape political persecution may no longer be motivated to remain politically active, for she no longer lives under the government she opposed. But a person

who says that she wants to live in the United States because of the freedom to worship can fairly be expected to actually worship after she gets here. Religious motivation, if sincere, will not disappear after the boundary line has been crossed. Chen professed a religious motivation. It was not unreasonable for the IJ to conclude that her failure to practice her religion while she lived on Guam cast doubt on the truthfulness of that professed motivation and thus on her credibility generally.

Chen had an opportunity at the immigration hearing to provide an explanation for the apparent inconsistency, if she had a good explanation. The government attorney explicitly raised the subject and elicited the testimony concerning her limited religious activities on Guam. The fact that her own attorney decided not to ask her for an explanation is not reason to ignore the inconsistency. The applicant bears the burden of establishing asylum eligibility. She gave reasons why she did not go to church on Saipan, but those reasons do not explain her failure to practice her religion on Guam. She gave no reasons for not attending religious services on Guam. Alternatively, she could have testified that in fact she was not devout and offered an explanation for what she put on her asylum application, but did not do that, either. Indeed, even on appeal Chen has failed to provide any explanation—her brief only discusses why she did not go to church while she was on Saipan and does not say anything about her limited religious activity during her three years on Guam. Inconsistent testimony cannot be disregarded simply because the petitioner and her attorney elect not to offer an explanation for the inconsistency.

We should remand Chen's case to the BIA with directions to reconsider her eligibility for asylum, without precluding the possibility of another adverse credibility determination based upon the IJ's demeanor finding and the single identified inconsistency in her testimony. The fact that so many of the grounds cited by the BIA in support of an adverse credibility determination were incorrect leaves uncertainty as to whether the BIA would have reached the same conclusion if limited to those two bases. That is enough to justify remanding the case, as opposed to denying the petition and, in effect, affirming the BIA's decision.

It is surely not the case, though, that there is reason to have confidence in Chen's credibility. No reason has been given to disbelieve the IJ's adverse demeanor finding, and Chen never has explained why she cited freedom to worship as a reason to come to the United States and then failed to worship once she got here.

Nonetheless, the majority closes the door to those reasonable doubts and requires the BIA on remand to accept Chen's credibility as a given. That result is no more supported by law than it is by logic. *He v. Ashcroft*, 328 F.3d 593 (9th Cir.2003), cited by the majority, does not support its refusal to remand for further consideration of the credibility issue. In that case there was no uncertainty as to the basis for the BIA's adverse credibility determination. In fact, in *He* we explicitly examined *both* the oral opinion of the IJ and the written decision of the BIA, something which the majority has refused to do here. Instead, we close our eyes to the IJ's adverse demeanor finding, based on the implausible inference that the BIA did not rely upon that demeanor finding. If there really is doubt about that, we should remand for clarification, not resolve the question ourselves.

I concur with the decision to remand, but dissent from the decision to preclude

the BIA from addressing the credibility
issue on remand.