

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2005

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3834

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Chen v. Atty Gen USA" (2005). *2005 Decisions.* Paper 561.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/561

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3834

———————

RUI LIANG CHEN,

Petitioner

v.

*ALBERTO R. GONZALES,
Attorney General of the United States,
Respondent

(*Substituted pursuant to Rule 43(c), Fed. R. App. P.)

———————

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A95-162-273)

———————

Submitted Under Third Circuit LAR 34.1(a)
June 30, 2005

Before:  RENDELL, BARRY, and BECKER, <u>Circuit</u> <u>Judges</u>.

(Filed September 12, 2005)

———————

OPINION OF THE COURT

———————

RENDELL, Circuit Judge.

Ruiliang Chen, a native and citizen of China, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Our jurisdiction arises under 8 U.S.C. § 1252. For the reasons that follow, we will deny the petition for review.

I.

As we write only for the parties, we will include only those facts relevant to the issues now before us. Chen entered the United States on July 11, 2001 without proper documentation, and on September 27, 2001, he filed an application for asylum. In his application, Chen claimed that he had suffered persecution based on "religion," "membership in a particular social group," and "political opinion." Specifically, he claimed that he had been persecuted by the Chinese government for organizing and participating in activities for a Christian church.

Chen explained that he adopted Christianity after attending a private unregistered church in China in December 1998. Due to the significant distance of his home from that church, he twice attended a closer, registered church. He ceased attending services at the registered church, however, because of its emphasis on "political propaganda." In the autumn of 1999, government officials visited the unregistered church and warned the parishioners that their activities were illegal and that they must stop. The parishioners

2

changed the location of their services and continued their activities.

Chen testified that he began hosting worship services for church members in his own home in early 2000, and several people came to the weekly gatherings. When government officials discovered the activities at his house, they warned him to stop. After this first warning, Chen changed the day on which he hosted services at his house from Sunday to Saturday. After he was warned a second time, Chen changed the time of day of the services. In all, Chen claimed that he was warned five or six times and that each time the authorities took his name. Chen testified that in the autumn of 2000, he was warned again to cease hosting meetings or the consequences would be severe. At this time, his work unit was notified of his involvement in these "illegal activities," and his employer also directed him to stop.

Chen testified that on Good Friday 2001, in the midst of services at his home, five or six government officials entered and arrested him. He stated that he was taken to a facility where he was interrogated and informed that his actions were illegal. He testified that during a day-long detention, the officials kicked and punched him. They forced him to sign a confession and required him to report for questioning once a month to monitor his activities. Chen went to two of these appointments before leaving China for the United States.

Chen testified that he continues to practice his religion in the United States and that he attends a church in Flushing, New York. He provided the address of the church

and asserts that at the services he attends there he reads the Bible and sings hymns.

## II.

The Immigration Judge ("IJ") denied Chen's application based on his determination that Chen failed to meet the burden of proof for asylum and that his claim presented "credibility problems." Specifically, the IJ found that Chen's claim was undermined by the fact that he changed the venue of the immigration proceedings from New York–which was closer to his church and any potential witnesses he could call to support his claim–to New Jersey–which was closer to his home and job. (A48.) Indeed, the IJ noted that even though Chen's claim had been once denied by the INS, he presented no witnesses or affidavits from his pastor or members of his congregation to bolster his claim and corroborate his current participation in church activities. (A49.)

More specifically regarding his credibility, the IJ found significant an inconsistency between Chen's testimony and his application; in his application, Chen claimed a fear of persecution because he left China illegally, but in his testimony, Chen claimed he feared persecution because he did not report for questioning after he left the country. (A50.) The IJ also did not believe that Chen would get five or six warnings from Chinese government officials to stop his activities with the unregistered church before being detained and beaten. (A50-51.) Additionally, the "enthusiasm" and "fervor" for religion that Chen expressed in his application were not at all apparent in his demeanor during his testimony, nor was there any corroboration of Chen's claim in his

application that he wished "to spread [the] Gospel" in the United States. (A51.) The IJ further noted: (1) that Chen's rationale for leaving the registered church because of the "political propaganda" was "extremely weak and not very persuasive"; (2) that Chen's claim that he did not move the location of his activities from his own home to a different location after warnings by government officials was "not persuasive and also reflects poorly on his credibility"; and (3) that Chen's statement in his application that the authorities were still harassing his parents regarding his whereabouts was "totally unpersuasive," "incredible," and "unbelievable." (A51.)

The BIA affirmed and adopted the decision of the IJ, noting that the Board's conclusions upon review of the record coincided with those articulated by the IJ. (A2.) Specifically, the Board determined that the IJ's conclusion that Chen had not met his burden of proving past persecution or a reasonable fear of future persecution was not clearly erroneous, and Chen had not met his burden of proving eligibility for the relief of withholding of removal or CAT protection. Accordingly, the Board dismissed the appeal.

Chen now seeks review of the BIA's decision.

## III.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden of proving

eligibility for asylum lies with the applicant. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). To establish eligibility for asylum, an applicant must demonstrate past persecution by substantial evidence or a well-founded fear of future persecution that is both subjectively and objectively reasonable. Lukwago v. INS, 329 F.3d 157, 177 (3d Cir. 2003).

Where the BIA defers to the IJ by adopting and affirming the IJ's decision, we review the IJ's decision to assess whether the BIA's decision to defer was appropriate. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). Whether an asylum applicant has met his burden of proof is a factual determination, and we review this determination under the substantial evidence standard. Gao, 299 F.3d at 272. We apply the same standard in reviewing an adverse credibility determination. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). Under this standard of review, we may reverse the IJ's findings only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "We will not disturb the IJ's credibility determination and findings of fact if they are 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'"[1] Tarrawally v. Ashcroft, 338

---

[1] Section 101(a)(3) of the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 305, amends 8 U.S.C. § 1158(b)(1) by adding new provisions concerning the alien's burden of proof. That section "takes effect on the date of the enactment of this division and shall apply to applications for asylum, withholding, or other relief from removal made on or after such date." Real ID Act of 2005 § 101(h)(2). Because Chen filed his application in September 2001, this section of the Real ID Act does not apply.

6

F.3d 180, 184 (3d Cir. 2003) (quoting <u>Balasubramanrim v. INS</u>, 143 F.3d 157, 161 (3d Cir. 1998)).

IV.

On appeal, Chen argues that the IJ erred in determining that his testimony was not credible and that he did not adequately prove his eligibility for asylum.  He maintains that the IJ did not properly consider a number of specific portions of his testimony.  Many of the facts Chen reiterates in his brief, however, were expressly mentioned by the IJ and discredited as either not credible or not compelling.

For example, Chen asserts that the IJ did not mention that he was arrested, detained, and beaten for his religious beliefs (Pet'r Br. at 10), yet the IJ specifically noted this in the finding of facts regarding the events of Good Friday 2001 (A45) and again commented on these assertions when questioning whether it was believable that police would give Chen so many warnings before resorting to violence (A50).  Chen also argues that the IJ erred in discounting what amounted to "two full pages of testimony" in the hearing transcript where Chen answered questions about Christianity as evidence of his faith.  (Pet'r Br. at 11.)  The IJ's assessment of these questions as "rudimentary" and "not impressive" is, however, not unreasonable, given that they were probative only of a basic knowledge of Christianity–not necessarily of Chen's history of practice–and given that they were asked on direct examination and Chen was not cross-examined on them.  (A93-94.)  Chen further alleges that the IJ did not consider certain reports and news articles he

7

submitted indicating, <u>inter alia</u>, that the Chinese government supervised religious practice by citizens; scrutinized and repressed unregistered and unapproved religious and spiritual groups; harassed, interrogated, detained, and physically abused leaders of such groups; and destroyed or seized unregistered places of worship. (Pet'r Br. at 12-13.) Although the IJ did not mention these documents other than to note that they were admitted into evidence (A43), none of the IJ's conclusions regarding Chen's credibility or failure to carry his burden of proof were necessarily inconsistent with the portions of these documents that Chen cites. The IJ's adverse credibility determination was based on his disbelief of certain aspects of Chen's <u>personal</u> story, not his disbelief that Christians were subject to persecution in China. Indeed, many of the IJ's findings indicated that he <u>did</u> believe religious persecution existed in China; rather, the IJ disbelieved Chen's assertions that in light of the sustained religious repression, he received several warnings to dissolve his unregistered church (A51), and that Chen did not move the location of his activities from his own home to a different location after he received the warnings (A52).

Chen challenges these findings of the IJ as speculative, arguing that the IJ had no reasonable basis for doubting that Chen would get several warnings from government officials or that the officials were still harassing his parents. (Pet'r Br. at 14-17.) However, we believe the IJ's findings regarding Chen's credibility had adequate support in the record under a substantial evidence standard. Under our precedent, we have stated that an IJ must support adverse credibility findings with "specific[,] cogent reasons," <u>Dia</u>,

353 F.3d at 250 (quoting Gao, 299 F.3d at 276), and such findings must be "'appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions.'" Id. (quoting In re S-M-J-(Interim Decision), 21 I. & N. Dec. 722 (BIA 1997)). As we have noted above, the IJ's conclusions were not inconsistent with the background information Chen submitted. Rather, the IJ found certain portions of Chen's story to be inconsistent with the general country conditions that Chen himself described. In other words, given the climate of strict supervision of religious practice and repression of unregistered organizations that Chen described, it was inconsistent and "inherently improbable" that he would be given several warnings to discontinue his activities or that upon discovery by government officials he would not move the location of the activities from his own home to a different location.

Lastly, Chen challenges the IJ's focus on his continued religious practice in the United States and the IJ's conclusion that his practice should not only have continued, but flourished. (Pet'r Br. at 15.) We view the IJ's focus on this point as bearing on Chen's credibility. The IJ found that Chen's asylum application, which expressed a "feeling of fervor, of enthusiasm for the religion" as well as a desire "to spread [the] Gospel" was inconsistent with his demeanor at the hearing, his testimony regarding the change of venue for the proceedings, and the fact that he produced no witnesses or affidavits to corroborate his continued practice. The IJ appropriately considered the lack of evidence

9

of Chen's claim of continued religious practice–evidence that would logically seem to have been readily accessible and easy to produce–as bearing on his credibility, and we believe the IJ's conclusions here to be reasonable and adequately supported by the record.

As we stated in Jishiashvili v. Attorney General of the United States, 402 F.3d 386, 392 (3d Cir. 2005), "where the [asylum] applicant is the only testifying witness, much depends on what the applicant says and how he says it." Although Chen's testimony alone could be legally sufficient to sustain his claim, see 8 C.F.R. § 208.13(a), we do not find it to be sufficiently "credible, persuasive, and specific" to do so. Balasubramanrim, 143 F.3d at 165. Furthermore, with such scant corroborative evidence in the record,[2] we are unable to conclude that a reasonable adjudicator would be compelled to conclusions contrary to those of the IJ. Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001) ("Under the substantial evidence standard, [a factual] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it.").[3]

---

[2]We note, although the IJ did not, that there was no evidence as to the actual injuries sustained by Chen, or as to his treatment and hospitalization. Nor was there any evidence that his parents–at whose home the services were being held–were subjected to any verbal or physical warning.

[3]Judge Becker's vote to deny the petition for review is predicated solely on the lack of evidence of Chen's continued religious practice in the United States. He agrees that the IJ's conclusions about demeanor and the fact that Chen produced no witnesses or affidavits to corroborate his continuous practice (that would seem to have been readily accessible), support the IJ's discrediting Chen's testimony about the asserted basis for Chen's seeking asylum, including his testimony about what occurred in China.

Judge Becker, however, believes that the IJ's statement that it was "essential" that an individual who came to the United States because of religious persecution must adduce persuasive evidence that his practice of religion has not only continued in the United

V.

Accordingly, we will deny the petition for review.

---

States but "flourished"–is legally incorrect. The standard for asylum based on religious persecution does not require any fervency of religious belief; rather, the INS regulations state only that an applicant must show "inclusion in, and identification with" a group which has suffered a pattern or practice of persecution. See 8 C.F.R. § 208.13(b)(2)(iii)(B) (setting the standard for establishing a well-founded fear of future persecution). The central inquiry, therefore, is not with the "heart of the convert" but with the "bonafide indicia" of religious belief or membership which would trigger persecution by the alien's government. See Najafi v. INS, 104 F.3d 943, 949 (7th Cir. 1997); see also Chen v. Ashcroft, 85 Fed. Appx. 44, 47 (9th Cir. 2003) (unpublished opinion) ("[T]here is no inconsistency between fleeing a country because one is persecuted or fears persecution due to one's religious practice and not practicing devoutly after leaving.").

Additionally Judge Becker believes that the other adverse credibility determinations made by the IJ are not supported by the record.

11